CORA ALSTON, GENERAL ADMINISTRATRIX OF THE ESTATE OF ALEX ALSTON, DECEASED, PLAINTIFF, v. LILLIAN HANKEY, DEFENDANT.

Submitted May 15, 1931—Decided November 16, 1931.

Before Gummere, Chief Justice, and Justices Parker and Case.

For the plaintiff, *Elmer Friedbauer*.

For the defendant, *Frank G. Turner*.

The opinion of the court was delivered by

Parker, J. This suit was begun by Alexander Alston in his lifetime to recover damages for personal injuries arising out of a collision between an automobile driven by the defendant and a coal truck on which Alston was riding as a helper. He had a verdict for $4,000 and the trial court allowed him a rule to show cause why the verdict should not be set aside as inadequate and a new trial ordered on damages only. This rule was dated October 17th, 1930, but before it came on to be argued, Alston died (February 11th, 1931) and his death being suggested on the record and his widow, general administratrix substituted, the case was submitted on briefs at the May, 1931, term of this court.

Defendant now makes the point that "the death of the plaintiff terminates the rule;" and argues that "a new trial on the question of damages only could avail nothing." Defendant's brief contains what purports to be a copy of summons and complaint in a new action begun March 28th, 1931, by Cora Alston, administratrix *ad prosequendum* of the original plaintiff to recover the loss sustained by his next of kin, pursuant to the Death act; and the defendant, as part of the point first stated, adds that "the death action * * * will settle all the issues between the parties."

We consider that all three of the quoted propositions are erroneous. The death of the original plaintiff does not terminate the rule, for that is a mere step in the cause, and

such death would not terminate the cause. By the act of 1855 (*Comp. Stat., p.* 2260, § 4), the personal representative may maintain an action for a trespass to person or property of his testator or intestate, so that the present action could have been begun by the general administrator. *Soden* v. *Trenton, &c., Corp.,* 101 *N. J. L.* 393. By section 3 of the Abatement act (*Comp. Stat., p.* 4), in case of death of plaintiff after declaration and before final judgment, the suit may be revived by the personal representative if it might be originally prosecuted and maintained by him. So, clearly, the action is regularly pending. As we have said, the rule is a mere step in the cause and does not lapse because of the death.

Nor does the institution of another suit under the Death act affect the matter. The two actions are separate and distinct. *Soden* v. *Trenton, &c., Corp., supra.* If the deceased had left a will, the executor by the express language of the Death act as amended by *Pamph. L.* 1907, *p.* 386, could have sued for the death claim and have joined the surviving cause of action in the same suit, as in the Soden case. In the absence of a will, the general administrator would prosecute the surviving action and an administrator *ad prosequendum* the death claim, as in *Ryan* v. *Public Service Railway Co.* (two cases), 103 *N. J. L.* 145, and *Terlingo* v. *Belz-Parr, Inc.,* 106 *Id.* 221. It follows that the death action will not settle all the issues between the parties.

The practical question is whether the death of the original plaintiff, which naturally puts an end to the loss of further anticipated future earnings, to future disability and further future pain and suffering, and which under present conditions would doubtless bar a further recovery for those elements after death occurred, should move us to refuse a new trial for inadequacy of damages. Our conclusion is that there should be a new trial, for we are clear that the damages were inadequate. Plaintiff showed money losses consisting of disbursements and of eighty-one weeks' loss of wages at $25.50 per week, amounting to $3,907.50. The man was then left with permanent deformities and with what is said to be a permanent disability of one leg. He was allowed nothing for pain

and suffering, nothing for disability. We say nothing; practically nothing, as the verdict was only $72.50 more than the money losses. The defendant does not question these facts but argues merely the points above considered, and which we deem entirely without substance. Even though the original plaintiff is dead, he lived from April 8th, 1929, until February 11th, 1931, a period of twenty-two months, a cripple after two months in the hospital, under treatment for infection for a year. The original injury was a compound fracture of tibia and fibula of the right leg with dislocation of the ankle joint. It seems obvious that the jury ignored pain and suffering and disability, and allowed only for expenses paid and loss of earnings up to the time of trial.

It is suggested in the complaint in the death case that the verdict of negligence in this case renders the question of negligence in the death case *res judicata*. This point is not directly before us, but we may as well suggest that apart from difference in parties, a verdict is not *res judicata* of anything until crystalized into a judgment. However, on the assumption that the suit under the Death act has not yet come to trial and that the same questions of liability are involved and must be tried, we think the wise course in the present case is to direct a new trial at large, and that this case and the Death act case be tried together, each on its own record, as in the Ryan and Terlingo cases, *supra*.

The rule will accordingly be made absolute on both damages and liability.